# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

BELINDA, W.[1],

        Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy
Commissioner for Operations, performing the
duties and functions not reserved to the
Commissioner of Social Security,

        Defendant.

Case No. 1:17-cv-01776-SI

**OPINION AND ORDER**

Tim Wilborn, WILBORN LAW OFFICE, P.O. Box 370578, Las Vegas, NV 89137. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Thomas M. Elsberry, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Belinda W. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB and SSI on July 26, 2010, alleging disability beginning on February 6, 2008. Plaintiff alleged disability based on a combination of impairments, including lower back spasms, type II diabetes, anxiety attacks, edema in her legs, obesity, a thyroid condition, and migraines. AR 43. Plaintiff was born April 14, 1962, was 48 years old at the alleged disability onset date, and is now 56 years old. Her applications were denied initially and upon reconsideration. AR 51, 125. She timely requested a hearing before an administrative law judge ("ALJ"), and the administrative hearing was held on August 12, 2015. AR 9. On December 29, 2015, the ALJ found Plaintiff to be not disabled. AR 141. After this decision, Plaintiff appealed the ALJ's decision to the Appeals Council. AR 229-237. The Appeals Council adopted the ALJ's decision in part, but did not agree that Plaintiff was unable to perform any of her past relevant work. AR 5. The Appeals Council concluded that Plaintiff was able to perform her past work as a call center customer service technician and was, therefore, not disabled. *Id.* The Appeals Council's decision thus became the final decision of the Commissioner. AR 6. Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.　Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.　Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.　Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.　Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The Decisions of the ALJ and Appeals Council

The ALJ first noted that Plaintiff met the insured requirements of the Social Security Act through December 31, 2013. The ALJ then engaged in the sequential analysis required by regulation. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date, February 6, 2008. AR 132. At step two, the ALJ concluded that Plaintiff had the following severe impairments: morbid obesity; type II diabetes mellitus;

discogenic and degenerative disorder of the lumbar spine; knee pain; and probable obstructive sleep apnea. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals one of the specific impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 134. The ALJ then determined that Plaintiff has the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is further limited to: standing/walking for two hours, and sitting for six hours during an eight-hour workday; work that would permit a sit/stand option allowing the claimant to alternate between sitting and standing positions once each hour for five minutes, but she would not leave the work station; occasional climbing of ladders, ropes, scaffolds, ramps or stairs; occasional stooping, kneeling, crouching and crawling; frequent balancing; and avoiding concentrated exposure to extreme cold, excessive vibration, the operational control of moving machinery, unprotected heights, and hazardous machinery.

AR 136.

Relying on testimony of the vocational expert, the ALJ found that Plaintiff could not perform her past relevant work. The ALJ then found at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including callout operator, charge account clerk, and table worker. In making this determination, the ALJ again relied on the testimony of the vocational expert.

The Appeals Council agreed with and adopted the ALJ's findings at steps one through three of the sequential analysis. The Appeals Council disagreed, however, with the ALJ's finding at step four that Plaintiff is unable to perform any of her past relevant work. The Appeals Council determined that the limitations set out in the RFC do not preclude Plaintiff's performance of her past relevant work as a call center customer service technician. For this reason, the Appeals Council concluded that Plaintiff was not disabled.

**DISCUSSION**

Plaintiff argues that the Commissioner erred in the following ways: (A) the Appeals Council's determination that Plaintiff can perform her past relevant work was erroneous; (B) the ALJ improperly rejected medical evidence; (C) the ALJ improperly rejected Plaintiff's testimony; (D) the ALJ improperly rejected lay witness testimony; and (E) the ALJ erred in providing the vocational expert a hypothetical that did not contain all of Plaintiff's limitations; and (F) Plaintiff is disabled under the Medical-Vocational Guidelines as of her 50th birthday.

**A. Past Relevant Work**

The Appeals Council found at step four that Plaintiff was not disabled because she was capable of performing her past relevant work as a call center customer service technician, DOT 249.362-062. Plaintiff argues that the Appeals Council's determination was erroneous and not supported by substantial evidence.

Plaintiff had the burden of showing that she can no longer perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). She had to prove that she cannot "perform [her] past relevant work 'either as actually performed or as generally performed in the national economy.'" *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)).

A claimant can perform past relevant work as "actually performed" if she retains the capacity to perform the "particular demands and job duties peculiar to an individual job as he or she actually performed it." Social Security Ruling ("SSR") 82-61, *available at* 1982 WL 31387 (Jan. 1, 1982). A claimant is considered capable of performing past relevant work as "generally performed" if she retains the capacity to perform the "functional demands and job duties of the job as ordinarily required by employers in the national economy." *Id.* Vocational experts may offer expert opinion testimony on whether a hypothetical person with the claimant's physical and

mental limitations could meet the demands of the claimant's past relevant work, either as actually performed or as generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2).

The Appeals Council relied upon on testimony from a vocational expert to reach the conclusion that Plaintiff "retained the capacity to perform her past relevant work." AR 5. The ALJ asked the vocational expert whether a hypothetical claimant with the same age, education, experience, and limitations found in Plaintiff's RFC could perform any of Plaintiff's past work "as it is actually or customarily performed per the DOT?" AR 36. The vocational expert testified that a claimant with those limitations could perform Plaintiff's past relevant work as a customer service technician. AR 37. The vocational expert did not specify whether the claimant could perform the work as actually or generally performed, but the Appeals Council noted (erroneously) in its decision that the vocational expert found that Plaintiff was able to perform her previous work "as she actually performed it (sedentary and semi-skilled)." AR 5. In its final conclusion, however, the Appeals Council simply stated that Plaintiff could perform her past relevant work, without specifying whether it is as actually performed or as generally performed.

Plaintiff contends that the Appeals Council erred in making this determination because Plaintiff cannot perform the work of a call center customer service technician as she actually performed it. Plaintiff asserts that the demands of her call center past relevant work exceed the limitations provided by the ALJ in her RFC. The claimant is the primary source for determining the duties and demands of her past relevant work as it was actually performed. SSR 82-62, *available at* 1982 WL 31386, at *4 (Jan. 1, 1982). Social Security Regulations list two sources that may be used to determine how a claimant's work was actually performed: a properly completed vocational report, *see* SSR 82-61, and the claimant's testimony, *see* SSR 82-41,

*available at* 1982 WL 31389 (Jan. 1, 1982). Plaintiff submitted a vocational report detailing the duties of her call center past relevant work as she actually performed it. The vocational report indicated that Plaintiff's work as a call center technician required eight hours of work per day, with six-to-eight hours of sitting and two hours of walking per day. AR 16, 300-301. The report also stated that Plaintiff's work as a call center technician required zero hours of standing per day. AR 301.

Plaintiff argues that her RFC conflicts with the demands and duties of her call center past relevant work in two ways. First, Plaintiff asserts that her previous work required longer periods of sitting than her RFC allows. Plaintiff's RFC allows her to sit for up to six hours per work day. Plaintiff argues that this limitation precludes her past relevant work, which required six-to-eight hours of sitting per work day. Although Plaintiff asserts that her previous work required her to sit for six-to-eight hours per day, she also indicated in the vocational report that she walked for approximately two hours each eight-hour workday. If Plaintiff worked eight-hour days with two hours allocated for walking, then Plaintiff would have only six hours remaining per day for sitting or other activities. Thus, even though Plaintiff estimated that she sat six-to-eight hours per day, Plaintiff's reported description of her duties suggests that she was sitting for up to approximately six hours per day. When the vocational report is reviewed in totality, the Appeals Council reasonably found that there is no conflict between the limitations in the RFC and the duties of Plaintiff's past relevant work as she described it. The Appeals Council's finding should be upheld if it is supported by reasonable inferences in the record. *Batson*, 359 F.3d at 1193. The Appeals Council rationally and reasonably interpreted the facts and found that Plaintiff could perform her past relevant work as actually performed.

Second, Plaintiff contends that her RFC requires an opportunity for a sit/stand option for five minutes every hour, but her past relevant work at the call centers entailed "zero standing." This sit/stand option requires that Plaintiff be permitted to alternate between sitting or standing positions once per hour for five minutes. Although the vocational report indicated that Plaintiff's past relevant work did not require any standing, Plaintiff also indicated that she walked around for two hours per day to answer questions for the other employees. As previously discussed, the vocational report stated that Plaintiff spent approximately six-to-eight hours per day sitting. Given that Plaintiff's workdays lasted eight hours, for Plaintiff to have five minutes set aside per hour for this sit/stand option, Plaintiff would need up to forty minutes of sitting or standing per day. Whether Plaintiff chose to reposition by sitting or standing, the option to sit or stand and the time needed for the sit/stand option are well within the job duties as described in the vocational report. The court may overturn the decision of the Appeals Council "only if it is not supported by substantial evidence or if it is based on legal error." *Carillo-Yeras v. Astrue*, 671 F.3d 731, 734 (9th Cir. 2011) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)). The Court does not find that the Appeals Council erred in concluding that Plaintiff could perform her past relevant work as a call center customer service technician, even with the sit/stand option required in Plaintiff's RFC.

**B. Medical Evidence**

Plaintiff next argues that the ALJ improperly weighed the medical opinion of examining physician Jon McKellar, M.D. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a

treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints; inconsistency with medical records;

inconsistency with a claimant's testimony; inconsistency with a claimant's daily activities; or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*¸ 759 F.3d at 1013; *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or she ignores it).

Dr. McKellar conducted a general examination of Plaintiff. The parties do not dispute that Dr. McKellar qualifies as an examining physician or that his opinion was contradicted by the opinion of Mike Henderson, D.O., another examining physician.[2] The Court therefore analyzes Dr. McKellar's opinion as a controverted opinion of an examining physician. As such, the ALJ needed to provide a specific, legitimate reason for discounting Dr. McKellar's opinion. *See Lester*, 81 F.3d at 830.

Dr. McKellar opined that Plaintiff could not remain in a sedentary position for more than three or four hours per day. *Id.* Additionally, Dr. McKellar stated, "[Plaintiff] fatigues rapidly. I would imagine if she walked more than 20 minutes she would be exhausted. If she stands for more than five or ten minutes her back pain is going to start hurting her and she'll need to sit down." AR 605. The ALJ accorded this opinion little weight and provided two reasons for discounting the opinion. First, the ALJ found Dr. McKellar's opinion inconsistent with his

---

[2] For example, Dr. Henderson stated that Plaintiff required "no restrictions on sitting," but Dr. McKellar opined that Plaintiff could only be sedentary for up to three or four hours. AR 722.

objective observations. Second, the ALJ stated that Dr. McKellar had limited insight into Plaintiff's limitations because he examined Plaintiff only once.

### 1. Inconsistency with Objective Observations

The ALJ found Dr. McKellar's opinions inconsistent with his objective observations that Plaintiff maintained a full range of motion throughout her knees and lumbar spine. Inconsistency between a physician's opinion and the physician's medical observations is a specific, legitimate reason to discredit the opinion. *Tommasetti*, 533 F.3d at 1041. Plaintiff argues that the ALJ erred by discounting the opinion for inconsistencies because Dr. McKellar's objective findings are, in fact, consistent with his opinions. Plaintiff further contends that Dr. McKellar's observation that Plaintiff maintained a full range of motion in her lumbar spine and joints does not conflict with Dr. McKellar's opinions because range of motion testing merely measures how far joints can move, not the pain caused by these movements. Thus, according to Plaintiff, a claimant may have a full range of motion in her knees and spine but suffer from pain or difficulties that require the limitations included in Dr. McKellar's opinion. Finally, Plaintiff argues that the ALJ improperly substituted her opinion for that of the physician.

Dr. McKellar's treatment notes support the ALJ's determination that Dr. McKellar's objective findings are inconsistent with the limitations provided in his opinion. The Court notes that Plaintiff offers no authority to support the assertion that range of motion testing measures only movement and does not measure pain. Regardless, Dr. McKellar's treatment notes also discuss both the ranges of motion that Plaintiff can achieve and Plaintiff's pain in various positions. For instance, Dr. McKellar's treatment notes state that Plaintiff had "an excellent range of motion about her lumbosacral spine" and her "[l]ower extremity strength was normal." AR 605. He also reported that Plaintiff's "chief complaint is back pain" but "[w]ith sitting the patient has minimal pain, maybe 1 to 2 out of 10." AR 604. These findings are not consistent

with Dr. McKellar's opinion that Plaintiff would be unable to sit for more than four hours. An ALJ may properly reject a physician's opinion because of its internal inconsistences. *See, e.g.*, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (noting that physician "repeatedly reported [the claimant] was unemployable while acknowledging he continued to work full time"). The ALJ found that Dr. McKellar's opinion of Plaintiff's functioning did not match the objective observations that Plaintiff retained full range of motion throughout her spine and knees. Moreover, Dr. McKellar reported that Plaintiff had minimal pain while sitting. These inconsistencies are a specific, legitimate reason to reject Dr. McKellar's contradicted medical opinion.

The Court also rejects the assertion that the ALJ substituted her judgment for that of the physician. The ALJ is charged with resolving conflicts in the medical record, *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003), and an ALJ may discredit medical opinions that are not supported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195; *see also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) ("The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities."). Dr. McKellar's opinion was contradicted by Dr. Henderson's opinion. The ALJ was within her authority as a factfinder to compare Dr. McKellar's medical opinions to his objective findings and to resolve any conflicts in the record.

In rejecting Dr. McKellar's opinion, the ALJ also noted that "opinions based on 'imagination' are not very reliable, especially when compared to opinions based on medical evidence." AR 138. The ALJ's reasoning refers to Dr. McKellar's opinion that he "would imagine if [Plaintiff] walked for more than twenty minutes she would be exhausted." AR 605. Plaintiff argues that Dr. McKellar merely used the colloquial phrase "I imagine" to describe what

he would estimate or predict, and the ALJ read the phrase too literally. The Court agrees that

Dr. McKellar used the phrase in a colloquial sense, but Plaintiff's interpretation does not advance

her argument. The ALJ highlighted Dr. McKellar's use of the word "imagine" to emphasize

Dr. McKellar's use of estimation, the lack of objective evidence to support his opinion, and to

compare his opinion to other, better-supported, contradicting opinions in the record. "The ALJ

need not accept the opinion of any physician . . . if that opinion if brief, conclusory, and

inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. The ALJ did not err by

discounting the opinion for this reason.

### 2. Dr. McKellar Examined Plaintiff Only Once

The ALJ's second reason for discounting Dr. McKellar's opinion was that he examined

Plaintiff only once, and thus had limited insight into Plaintiff's limitations. The Commissioner

no longer relies on this argument and appears to concede this point. To the extent that the ALJ

relied on this basis for discounting Dr. McKellar's opinion, the Court finds that this reason is not

a specific, legitimate reason to discredit the opinion. "The number of times a physician has

examined a claimant is only a factor in determining the extent of a *treating* relationship, not an

*examining* relationship." *Weltch v. Astrue*, 2011 WL 1135930, *5 (D. Or. Mar. 28, 2011)

(emphasis in original); *compare* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) *with* 20 C.F.R.

§§ 404.1527(d)(2)-(2)(i), 416.927(d)(2)(2)(i) (listing the frequency of examination as a factor

only in a treatment relationship, not in an examining relationship); *see also Henderson v.

Astrue*, 634 F. Supp. 2d 1182, 1192 (E.D. Wash. 2009) (finding that an ALJ's conclusion that

medical opinions based on one-time examination should be rejected was erroneous as violative

of regulation and case law).

The fact that Dr. McKellar examined Plaintiff only once serves to classify him as an

examining rather than treating physician. Without more, this fact is not a specific, legitimate

reason to discount Dr. McKellar's opinion. *See Garrison*, 759 F.3d at 1012 (noting that although treating physicians are entitled to greater weight than examining physicians, the opinion of an examining physician is still entitled to greater weight than that of a non-examining physician). Nevertheless, the ALJ's error was harmless because the ALJ provided an alternative specific and legitimate reason for rejecting Dr. McKellar's opinion, namely the opinion's inconsistency with Dr. McKellar's objective observations. When an ALJ gives a valid reason to discount a contradicted medical opinion, the invalidity of an additional reason is "harmless and does not negate the validity of the ALJ's ultimate conclusion." *Batson*, 359 F.3d at 1197.

## C. Plaintiff's Testimony

Plaintiff next argues that the ALJ improperly evaluated Plaintiff's subjective symptom testimony. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez*, 572 F.3d at 591. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

Plaintiff testified before the ALJ that she was limited to thirty minutes of sitting due to

pain and could only walk approximately twenty feet before needing to rest for twenty-to-thirty

minutes. AR 340. The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements regarding

the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with

the evidence in the record. The ALJ determined that Plaintiff's symptom testimony was not fully

credible because Plaintiff's statements were inconsistent with the objective evidence in the

record and Plaintiff was non-compliant with medical directives. Plaintiff argues that the ALJ's

reasons for discounting the symptom testimony were not sufficiently specific, clear, and

convincing.

### 1. Non-compliance with Medical Directives

The ALJ next discounted Plaintiff's symptom testimony because Plaintiff was non-

compliant with medical directives. Failure to follow a prescribed course of treatment, under

certain circumstances, constitutes a clear and convincing reason for rejecting a claimant's

subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). This is

particularly true in the context of subjective pain testimony, as the failure to seek treatment or

follow treatment suggests the complaints are "unjustified or exaggerated." *Orn*, 495 F.3d at 638.

"But in the case of impairments where the stimulus to seek relief is less pronounced, and where

medical treatment is very unlikely to be successful, the approach to credibility makes little

sense." *Id.*

In *Orn*, the Ninth Circuit held that "the failure to follow treatment for obesity tells us little or nothing about the claimant's credibility." *Id.* In that case, the court also emphasized that a treating source must prescribe—"not simply recommend"—a treatment "that is clearly expected to restore the ability to engage in substantial gainful activity" before the Commissioner can find a claimant failed to follow a prescribed treatment. *Id.* at 636-37; SSR 02-1p ("Evaluating Obesity").

The ALJ noted that the medical record was "riddled with recommendations from [Plaintiff's] treatment providers to exercise and make dietary changes in efforts to lose weight," yet Plaintiff did not follow through on those recommendations. AR 137. In Plaintiff's testimony before the ALJ, Plaintiff acknowledged that her doctors spoke with her about her diet and improving her nutrition, but admitted she that rarely cooks and often eats fast food. AR 32-33. Plaintiff attempted some water aerobics in 2009 and otherwise has not engaged in much exercise.

Under the law of this circuit, the ALJ's reasoning is neither clear nor convincing. As discussed in *Orn*, Plaintiff's alleged failure to follow "recommendations" for her obesity "tells us little or nothing about [Plaintiff's] credibility" because, by Social Security's own regulation, "the goals of treatment for obesity are generally modest, and most treatment is ineffective." SSR 02-1p. Moreover, these recommendations do not suggest that Plaintiff is capable of much physical activity or that it would be expected to restore Plaintiff's ability to engage in substantial gainful activity. *See* AR 411 (suggesting water aerobics because Plaintiff "is just simply too overweight at this point to get much done without causing significant pain in her back"); AR 433 (noting that Plaintiff is being sent to Recovery Zone for an exercise program "so that she can participate in aqua type exercise" because the chiropractor "believe[s] that this would be most appropriate given [Plaintiff's] obesity and other limitations").

Finally, these treatment notes, as even the ALJ recognized, are merely "recommendations" and not prescriptions. *See, e.g.*, AR 534, 567 ("We discussed Weight Watchers and an exercise plan."); AR 588, 653, 702 (noting that Plaintiff "is encouraged to return to her exercise routine to try to achieve weight loss"); AR 621, 625, 634, 641, 687, 691, 695, 729, 738 (noting that topics discussed included "diabetic diet, low cholesterol diet, weight control and daily exercise"); AR 646, 698 (noting, as part of a handout on insomnia, a recommendation, among many others, to get regular exercise, but not three-to-four hours before bedtime); AR 651, 701 (noted "goal" of "increasing exercise and activity level" and of "losing 10-20 pounds over next 2-3 months"); AR 731 (noting that Plaintiff "needs to continue on weight reduction before surgery" and that she "[p]lans to go to the YMCA and do swimming exercise for better weight reduction—already talked about food and diet restrictions"). "A treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment." SSR 02-1p. Accordingly, Plaintiff's failure to follow these recommendations fairly cannot be characterized as a failure to follow prescribed treatment. The ALJ's reasoning that Plaintiff failed to follow prescribed treatment is not clear and convincing nor supported by substantial evidence in the record.

### 2. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883.

The ALJ listed several inconsistencies between Plaintiff's alleged sitting and walking limitations and the objective evidence in the record. The ALJ first noted that, although Plaintiff alleges difficulty walking more than twenty feet without rest, Plaintiff reported that she

participated in water aerobics five days per week in 2009. AR 655. The ALJ also found that, despite Plaintiff's reported back pains, Plaintiff's 2010 medical examination determined that she maintained the full range of lumbar movement. AR 605. The ALJ next noted that a 2013 medical examination conducted by Dr. Henderson revealed that Plaintiff had "no restrictions for sitting" and her foot pain was "mild." AR 722. Dr. Henderson reported that Plaintiff had no muscle atrophy in the lower extremities, normal strength in her quadriceps and hamstrings, and normal extension in her knees. AR 721. Furthermore, Dr. Henderson noticed inconsistencies in Plaintiff's range of motion and pain behaviors during the exam. AR 720.

The ALJ reasonably found the objective medical evidence did not fully corroborate Plaintiff's assertion that she is limited to sitting for thirty minutes and that she needs rest after walking twenty feet. The lack of objective medical evidence, however, cannot by itself support a negative credibility finding. *Robbins*, 466 F.3d at 883. Because the ALJ did not provide any other clear and convincing reason, the ALJ erred in her evaluation of Plaintiff's testimony.

## D. Lay Witness Testimony

Plaintiff next argues that the ALJ improperly evaluated the lay witness testimony of Plaintiff's husband Scott W. and friend Michelle D. Both witnesses provided third-party function reports with detailed testimony regarding Plaintiff's limitations and activities of daily living.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

## 1. Testimony of Scott W.

In his third-party function report, Scott W. testified that Plaintiff had difficulty moving, standing, sitting, and sleeping, AR 367-68, and that Plaintiff cannot walk more than 15 feet before needing to rest 20-to-30 minutes, AR 372. Scott W. testified further that sitting caused Plaintiff numbness and tingling, which then required Plaintiff to lie down for about one hour. AR 373. In other areas of his testimony, Scott W. alleged that it is "hard for [Plaintiff] to stand, she can't kneel at all. She has a hard time moving even 5 feet." AR 369.

The ALJ noted that Scott W.'s testimony "essentially mirror[s] the [Plaintiff's] allegations of entirely debilitating symptoms." AR 139. The ALJ discounted Scott W.'s testimony "for the same reasons" the ALJ discounted Plaintiff's testimony. *Id.* The standards for discounting a claimant's testimony (clear and convincing) are higher than the standards for discounting lay testimony (germane). Additionally, lay testimony that is inconsistent with medical evidence constitutes a germane reason to discount that testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). One of the reasons the ALJ gave for discounting Plaintiff's

testimony was that her testimony was inconsistent with and unsupported by the objective medical evidence. The Court found the ALJ's interpretation to be reasonable even though this reason cannot stand alone as a clear and convincing reason to discount a claimant's testimony. This reason is sufficient, however, as a germane reason to discount lay witness testimony. Accordingly, the ALJ did not err in discounting the testimony of Scott W.

### 2. Testimony of Michelle D.

Michelle D., Plaintiff's friend for 14 years, submitted a third-party function report in support of Plaintiff's prior 2010 social security disability application. AR 284-91. Like Scott W., Michelle D. also testified that Plaintiff cannot sit or stand for long periods or walk long distances without breaks. AR 284. Regarding Plaintiff's daily activities, Michelle D. testified that Plaintiff must lean heavily on her cart when shopping, moves slowly, and takes breaks on benches and chairs when possible. AR 287. Michelle D. also testified specifically that Plaintiff cannot squat, bend, kneel, reach the floor, or walk or sit for longer than 20 minutes. AR 289.

Similar to the third-party function report from Scott W., the testimony of Michelle D. parallel's Plaintiff's symptom testimony. The ALJ offered the same reason in discounting Michelle D.'s testimony as in discounting Scott W.'s—for the same reasons the ALJ discounted Plaintiff's testimony. As with the testimony of Scott W., Michelle D.'s testimony was similar to Plaintiff's testimony, and the ALJ therefore gave a germane reason for rejecting Michelle D.'s testimony regarding Plaintiff's symptoms—inconsistency with the objective medical evidence.

### E. Vocational Expert Hypothetical

Plaintiff also contends that the ALJ erred in posing an incomplete hypothetical to the vocational expert, which the vocational expert used both in determining that Plaintiff could perform past relevant work and in concluding at step five that jobs existed that Plaintiff could perform. Plaintiff specifically claims that the ALJ omitted limitations included in lay witness

testimony and the opinion of Dr. McKellar. A hypothetical posed to the vocational expert must include "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217; *see also Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (holding hypothetical must include all of plaintiff's limitations, but the record must support all assumptions in the hypothetical). The ALJ may properly omit non-credible limitations from the hypothetical. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (citing *Batson*, 359 F.3d at 1195-96).

Having already affirmed the ALJ's evaluation of the opinions of the lay witnesses and Dr. McKellar, the Court finds no error in the ALJ's exclusion of additional limitations expressed by these witnesses from the hypothetical posed to the vocational expert. The Court notes, however, that upon remand to consider Plaintiff's testimony, the RFC and hypothetical may change.

## F. Medical-Vocational Guidelines

Plaintiff asserts that, under rule 201.14 of the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly referred to as "the Grids"), she is entitled to a finding of disability as of her 50th birthday.

An ALJ may apply the Grids at step five as one of "the two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy[.]" *See Tackett*, 180 F.3d at 1100-01 (quoting 20 C. F. R. § 404.1560(b)(3)). Applying of the grids at step five, however, first required Plaintiff to meet her burden at step four of showing that she cannot perform any of her past relevant work. *See id.* at 1101. As explained above, the Court finds no error in the Appeals Council's conclusion that Plaintiff can perform past relevant work as actually performed. If a claimant fails to meet his or her burden in steps one through four, the sequential analysis ends. 20 C.F.R. § 404.1520(a)(4). In the present case,

the sequential analysis ended at step four and the Appeals Council was not required to apply the Grids.

Because the ALJ erred in considering Plaintiff's subjective testimony, however, it is unclear whether on remand the RFC, the hypothetical, and the subsequent conclusion at step four that Plaintiff can perform her past relevant work will remain unchanged, and thus the Grids will become applicable. That is a determination the Commissioner will have to make on remand.

## G. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the

district court can exercise its discretion to remand for an award of benefits. *Id.* The district court
retains flexibility, however, and is not required to credit statements as true merely because the
ALJ made a legal error. *Id.* at 408.

The record in this case is not free from ambiguities and there is useful purpose in further
proceedings. The Commissioner on remand should consider Plaintiff's testimony, and depending
on the outcome of that consideration, it may change the RFC, the step four finding, the
application of the Grids, and other findings. Accordingly, this case is remanded for further
proceedings.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND
REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 22nd day of January, 2019.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge